**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**MARY D. BROCK**                                                                            **PLAINTIFF**

**Case No. 1:05-cv-082**

**JO ANNE B. BARNHART,**
**COMMISSIONER, SOCIAL**
**SECURITY ADMINISTRATION**                                                **DEFENDANT**

## ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Mary D. Brock appeals the decision of the

Commissioner of the Social Security Administration to deny her claim for Disability Insurance

benefits.  Both parties have moved for judgment on the administrative record and supporting

briefs.  In this administrative review, the Court must determine whether there is substantial

evidence in the administrative record to support the ALJ's decision that the Plaintiff is not

disabled.  For the reasons discussed below, the Court affirms the final decision of the

Commissioner.

## I.  FACTUAL BACKGROUND

Plaintiff Mary Brock was 45 years old at the time of the hearing before the ALJ.  She

obtained a General Equivalency Diploma (GED).  Plaintiff's past relevant work experience

includes work as an assistant manager, assembly line worker, cashier/cook, restaurant owner, and

book binder.  Jerry Miller, an impartial vocational expert testified that Plaintiff's past relevant

work as an assembly line worker was performed at the light exertional level, while Plaintiff's

other past relevant work was performed at a medium level of exertion.  Plaintiff applied for

1

disability insurance benefits and supplemental security income alleging disability due to breast cancer, low back pain, and anxiety attacks.

## II.    LEGAL PRINCIPLES

### A.    Substantial Evidence Standard of Review

In this action for judicial review pursuant to § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), the Court must determine whether there is substantial evidence on the record as a whole to support the decision of the Commissioner.  *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).  This Court's review is deferential; the Court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *Prosch,* 201 F.3d at *1012.*  In determining whether substantial evidence exists, the court will consider evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Craig v. Apfel,* 212 F.3d 433, 435-36 (8th Cir. 2000).  However, the Commissioner's findings may not be reversed merely because evidence may exist to support the opposite conclusion. *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994).  As long as substantial evidence in the record supports the Commissioner's decision, the decision may not be reversed either because substantial evidence exists in the record that would have supported a contrary outcome, *id.,* or because this Court would have decided the case differently. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

**B.      Disability Determinations and the Burden of Proof**

The Social Security Regulations (the "Regulations") prescribe a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. § 404.1520 & 416.920 (2003); *Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart,* 353 F.3d 602, 605 (8th Cir. 2003); *accord Lewis v. Barnhart,* 353 F.3d 642, 645 (8th Cir. 2003). The United States Supreme Court has explained:

> The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." . . . Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting."

*Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. § § 404.1521(b), 416.921(b)).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520; *Kelley,* 133 F.3d at 588.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity ("RFC") to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(4)(iv); 404.1545(4); *see Lewis,* 353 F.3d at 645-46 ("RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, 'what the claimant can still do' despite his or her physical or mental limitations.") (citing *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987); 20 C.F.R. § 404.1520(e) (1986)); *Dixon, supra.* The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner "to prove that there is other work that [the claimant] can do, given [the claimant's] RFC [as determined at step four], age, education, and work experience." Clarification of Rules Involving Residual Functional Capacity Assessments, etc., 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to

other work, but also that the other work exists in significant numbers in the national economy.

*Id.;* 20 C.F.R. § 404.1520(4)(v); *Dixon, supra; Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th

Cir. 2001) ("[I]f the claimant cannot perform the past work, the burden then shifts to the

Commissioner to prove that there are other jobs in the national economy that the claimant can

perform.") (citing *Cox v. Apfel,* 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel,* 204 F.3d

853, 857 (8th Cir. 2000). If the claimant can make an adjustment to other work that exists in

significant numbers in the national economy, then the Commissioner will find the claimant is not

disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will

find the claimant is disabled. 20 C.F.R. § 404.1520(r)(v). At step five, even though the burden of

production shifts to the Commissioner, the burden of persuasion to prove disability remains on

the claimant. *Goff*, 421 F.3d at 790 (citing *Stormo v. Barnhart,* 377 F.3d 801, 806 (8th Cir.

2004)).

## III.    DISCUSSION

### A.  ALJ's Evaluation of the Opinions of Plaintiff's Treating Physicians

Plaintiff argues that the ALJ improperly discounted the opinions of Drs. Brock

King and Sue Tsuda, Plaintiff's treating physicians. Plaintiff argues that Drs. King and Tsuda are

qualified to make assessments about limitations and are qualified and trained to recognize and

treat medical ailments outside of their specialty. Plaintiff states that both physicians were

familiar with Plaintiff's condition. Plaintiff further argues that Dr. Dodge was not asked to

comment on Plaintiff's limitations and his report supports Plaintiff's claim of lower back pain, as

he recognized that Plaintiff had lower back pain and an annular tear at the L5-S1 vertebrae and

recommended physical therapy and anti-inflammatory medication. [Tr. 211]. Plaintiff argues

that "[a] treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting an ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so, particularly when that doctor did not discharge the claimant from treatment." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). Finally, Plaintiff argues that the ALJ himself stated that he felt the Plaintiff clearly met the durational requirement (12 months) for a closed period of disability and that even if he paid a closed period, his concern was that the claimant's back was now disabling for possible continued benefit. The ALJ stated, "I think you clearly, based upon the problems you were having with your breast cancer, that you met the durational requirement. I'm convinced that with the surgery and the chemo, and the follow-up radiation, you certainly met the durational requirements, you were too sick to go back to work. Now that leads to a closed period. But at some point, your back got to the point where you probably couldn't continue to work, even if I paid a closed period. So that's what I'm going to develop further." [Tr. 353].

The regulations provide that a treating physician's opinion regarding an applicant's impairment will be granted "controlling weight," provided the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel*, 201 F.3d 1010, 1012 -1013 (8th Cir. 2000) (citing 20 C.F.R. § 404.1527(d)(2)). Consistent with the regulations, the Eighth Circuit has held that a treating physician's opinion is "normally entitled to great weight," but has also cautioned that such an opinion "do[es] not automatically control, since the record must be evaluated as a whole." *Id*. at 1013. Furthermore, a treating physician's opinion may be

6

discounted as being based on Plaintiff's complaints when it is "at odds with the weight of the objective evidence." *Rankin v. Apfel*, 195 F.3d 427, 430 (8th Cir. 1999).

The ALJ acknowledged that in early November 2004, Drs. King and Tsuda completed residual functional capacity assessments indicating that Plaintiff had the residual functional capacity to perform less than a full range of sedentary work activity.  Both physicians opined that Plaintiff could lift and carry less than 10 pounds, stand/walk for only 15 minutes, sit only 10 minutes, and had reaching and handling restrictions.  However, the supporting rationale of both physicians' findings was listed as "physical exam."  However, the ALJ noted that Dr. King had not examined the Plaintiff since February 23, 2004, almost nine months earlier.  Additionally, the ALJ found that these assessments were inconsistent with other evidence of record and stated that "it appears as though both physicians have taken the claimant's subjective allegations at face value in making their assertion[s]."  The ALJ also noted that these physicians treated Plaintiff for breast cancer and do not specialize in back impairments.

The ALJ reviewed Plaintiff's history of back pain.  The ALJ stated that the medical evidence showed that the Plaintiff first consulted Dr. Harry Starnes in January 2000 regarding her back pain.  A February 2000 MRI revealed mild herniation and a tear in a disc.  However, Plaintiff stated in the remarks section of Plaintiff's November 12, 2003, Application for Disability Insurance Benefits, that prior to July 1, 2003, she "did not realize any substantial health problems that affected my work."  [Tr. 52D].  In November 2003, another MRI specifically revealed mild disc desiccation at L5-S1 with an annular tear on the left side.  The ALJ stated Dr. Benjamin Dodge, an orthopedic specialist, who issued a report dated April 15, 2004, placed no limitation on Plaintiff.  The ALJ specifically noted that Dr. Dodge found that

Plaintiff had negative straight leg raising and was able to heel walk, toe walk and deep knee bend.  Her reflexes were 2+ and symmetric and motor strength was 5/5 in all nerve distributions.  Additionally, lumbar x-rays showed no evidence of acute osseous abnormality.  Plaintiff was not seen again with complaints related to her back pain until November 5, 2004, approximately seven months later, when she underwent evaluation by Dr. Keith Schluterman, a neurologist.  The ALJ thoroughly discussed Dr. Schluterman's findings.  Also, the ALJ noted that the Plaintiff testified that she had learned to do quite a lot with her left hand, such as fixing her hair.

The ALJ also reviewed Plaintiff's treatment regarding breast cancer.  On July 9, 2003, Plaintiff underwent surgery, consisting of right axillary lymph node dissection and right partial mastectomy.  Subsequently, Plaintiff was treated with chemotherapy from July 23, 2003, through March 30, 2004, and radiation therapy from May 21, 2004, through June 14, 2004.  The ALJ also relied upon a note dated June 14, 2004, by Plaintiff's radiation oncologist, Dr. Bryan Imamura, which stated, "Everything looks wonderful at this point."  [Tr. 246].  Additionally, a whole body bone scan performed on July 20, 2004, was stable without findings to suggest metastatic disease.  [Tr. 246].  In August 2004, a mammogram revealed no evidence of malignancy.  [Tr. 285].  While the ALJ stated that he did not doubt that the Plaintiff was "quite sick during her radiation and chemotherapy treatments," "[u]nfortunately, the law requires that a disability last for at least 12 months."

Here, the ALJ considered the medical records in their entirety and the record as a whole in determining that Plaintiff was capable of some work.  The Court finds that there is substantial evidence in the record to support the ALJ's decision to discount the opinions of Plaintiff's treating physicians.

**B.  ALJ's Evaluation of Plaintiff's Credibility**

Plaintiff contends that the ALJ's decision makes many assertions about the Plaintiff's allegations of back pain which are unfounded.  Specifically, Plaintiff states that the Plaintiff's MRI in November 2003 shows disk dessication at the L5-S1 with an annular tear, which the radiologist noted can be associated with low back pain.  Plaintiff also states that she was taking narcotic medication throughout the time period in question.  Additionally, Plaintiff argues that the ALJ did not evaluate the Plaintiff's credibility concerning the residuals of her breast cancer in accordance with *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), and Social Security Ruling 96-7p.

Regarding Plaintiff's contention that the ALJ made unfounded assertions about the Plaintiff's back pain, the ALJ stated that Plaintiffs allegations "must be rejected as not being credible *to the extent alleged*."  It is important to note that the ALJ did not find that Plaintiff had no pain, but that the pain did not prevent Plaintiff from doing any kind of work.  The mere fact that working may cause pain or discomfort does not mandate a finding of disability. *Ostronski v. Shater*, 94 F.3d 413, 418 (8th Cir. 1996).  Indeed, it is well recognized that a claimant can work despite pain unless that pain is disabling. As the Eighth Circuit has noted, "millions of people do every day."  *Wheeler v. Sullivan*, 888 F.2d 1233, 1238 (8th Cir. 1989).  As discussed above, the ALJ considered the medical records in their entirety and the record as a whole.  The "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993).

In analyzing a claimant's subjective complaints of pain, an ALJ must examine: "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions." *Polaski*, 739 F.2d at 1322. The ALJ's opinion specifically stated, "The claimant has made a number of subjective allegations and complaints which have been evaluated utilizing the criteria set forth in the case of *Polaski v. Heckler*, 739 F.2d 943 (8th Cir. 1984), Social Security Ruling 96-7p, and other relevant authority. Such authority mandates consideration of a number of specific factors in evaluating the credibility of the claimant's subjective statements. As will be noted herein, the claimant's subjective allegations are not borne out by the record and are not found to be fully credible to the extent alleged."

Examination of the ALJ's decision reveals that he considered each of the Polaski factors. The ALJ discussed the claimant's daily activities. [Tr. 22]. The ALJ's examination of the duration, frequency, and intensity of the pain is found throughout the opinion, and the ALJ specifically states, "it is my conclusion that the symptomology suffered by the claimant is not of a duration, frequency or intensity as to be disabling, nor would it preclude her from the performance of a full range of light work." [Tr. 23]. He also specifically discussed the factors alleged to precipitate and aggravate Plaintiff's symptoms, including "lifting, sitting, standing, or walking for any distance, and raising her arm overhead," and the effect of the medication that the Plaintiff was taking. [Tr. 22]. Finally, ALJ addressed Plaintiff's functional capacity, noting Plaintiff "has insisted in her testimony that she is unable to perform any kind of work," and considered Plaintiff's daily activities and precipitating and aggravating factors. [Tr. 21]. With regard to the residual effects specifically related to her breast cancer, the ALJ specifically noted

Plaintiff's claims of daily nausea, diarrhea three times a week, and constipation, and discussed her medications for these symptoms.

The Court finds that the ALJ properly considered the Plaintiff's credibility, and his findings are supported by substantial evidence.

### C.  ALJ's Evaluation of Plaintiff's Residual Functional Capacity

Plaintiff also argues that the ALJ did not properly evaluate the RFC because he did not provide a function-by-function analysis.  Plaintiff further argues that the ALJ substituted his judgment for that of the radiologist and the Plaintiff's various treating and examining physicians who have concluded that she has back pain.  Plaintiff also argues that the ALJ improperly relied on the non-examining medical consultants to conclude that the Plaintiff could perform light work activity.

The ALJ expressly concluded that "[b]ased on all of the evidence," the Plaintiff was capable of a full range of light work.  Specifically, he found that she could lift no more than twenty pounds at a time, frequently lift or carry objects weighing up to ten pounds, stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, and sit with normal breaks for a total of about six hours in an eight-hour workday.  The ALJ's opinion also noted that Jerry Miller, an impartial vocational expert, was asked to describe the Plaintiff's past relevant work.  Mr. Miller identified Plaintiff's past work as an assembly line worker as being performed at the light exertional level.

As Plaintiff notes, the RFC should identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis.  *See* S.S.R. 96-8p, 1996 WL 374184, at *1.  "This ruling cautions that a failure to make the function-

by-function assessment 'could result in the adjudicator overlooking some of an individual's limitations or restrictions.'"  *Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003) ("The ALJ made the following findings regarding Mr. Depover's RFC: The medical evidence shows that the claimant is capable of lifting and carrying 40 pounds occasionally and 20 to 30 pounds frequently; he cannot repetitively bend, stoop, squat, kneel, or crawl and he cannot continuously climb; he must avoid work around moving machinery and heights; and he cannot perform work requiring full peripheral vision or depth perception.").  Here, as in *Depover*, the ALJ did not simply describe the RFC in "general terms;" he made explicit findings.

With regard to the ALJ's reliance on the consulting physicians, even though the opinion of a consulting physician alone does not generally constitute substantial evidence, the ALJ did not rely solely on the opinion of the consulting physician, but also conducted an independent review of the medical evidence. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002). Furthermore, determination of residual functional capacity is based on all the evidence in the record, including "the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Id.* (citing *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir.2000); *Dykes v. Apfel,* 223 F.3d 865, 866-67 (8th Cir.2000) (residual functional capacity not determined based on medical evidence alone, although the decision must be based at least in part on some medical evidence).  As discussed above, the ALJ considered all of the evidence in the record, including the absence of objective medical findings to support her allegations and the credibility of the Plaintiff, in determining that Plaintiff could perform light work activity.  *See Burns v. Sullivan*, 888 F.2d 1218 (8th Cir. 1989).  Also, Plaintiff fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination

that her allegations were "not found to be fully credible to the extent alleged." *See Hogan v. Apfel,* 239 F.3d 958, 962 (8th Cir.2001) (deference to ALJ is appropriate when he explicitly discredits claimant and gives good reasons for doing so). *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

The Court finds that the ALJ properly considered the Plaintiff's residual functional capacity, and his findings are supported by substantial evidence.

### D.  ALJ's Evaluation of Plaintiff's Mental Impairment

Plaintiff argues that the ALJ did not properly document the application of the psychiatric review technique in his decision, as required by 20 C.F.R. § 404.1520(a). 20 C.F.R. § 404.1520a(a) provides that "when we evaluate the severity of mental impairments . . .  we must follow a special technique at each level in the administrative review process.  At the administrative law judge level, the ALJ "will document application of the technique in the decision." 20 C.F.R. § 404.1520a(e).  Subsection (b) explains that under that special technique, "we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)."  20 C.F.R. § 404.1520a(b). If we determine that you have a medically determinable mental impairment(s)," the ALJ "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section." 20 C.F.R. § 404.1520a(b).  20 C.F.R. § 404.1520a(e)(2) provides that the ALJ's "written decision must incorporate the pertinent findings and conclusion based on the technique.  The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the

13

mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." The functional areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a (c)(3).

When the ALJ rates the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), the ALJ" will use the following five-point scale: None, mild, moderate, marked, and extreme." 20 CFR § 404.1520a (c)(4). When the ALJ rates the degree of limitation in the fourth functional area (episodes of decompensation), the ALJ "will use the following four-point scale: None, one or two, three, four or more." *Id.* "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* After the ALJ rates the degree of functional limitation resulting from the Plaintiff's impairment(s), the ALJ will determine the severity of the Plaintiff's mental impairment(s). 20 CFR § 404.1520a (c)(4). If the ALJ rates the degree of the Plaintiff's limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, the ALJ will generally conclude that the Plaintiff's impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities. *Id.*

Here, the ALJ stated:

> At this juncture, it bears mentioning that the claimant has also alleged that she is disabled because of mental limitations. Specifically, she alleges that she suffers from depression, anxiety, and panic attacks. A special procedure is set out at 20 C.F.R. §§ 404.1520a and 415.920a. Essentially, it requires a determination of whether: (1) the evidential record reflects any medically ascertainable mental impairments; (2) there are any medical findings resulting from these impairments which impact upon the claimant's ability to work; and (3) an evaluation and rating

14

of the mental impairments indicates that there has been any functional loss of work related abilities.

The medical evidence shows that after her breast surgery in July 2003, the claimant reported experiencing depression as well as mood swings (Exhibit 5F, p. 8). She also reproted having panic attacks and difficulty sleeping in August 2003, and was diagnosed with depression and anxiety. She was prescribed Lorazepam and Alprazolam, anti-anxiety medications (Exhibits 5F, p. 5; and 9F, p. 1). However, after August 2003, there is no medical evidence showing that the claimant continued to experience problems with anxiety and depression. In fact, she did not report any further mental problems to any of her treating physicians, until she was seen on November 5, 2004 by Dr. Keith Schluterman for evaluation of back pain. At that time, she reported feelings of anxiety and depression for which she reported that she was currently taking Loranzepam and Zoloft (Exhibit 16F, p.1).

Although the claimant testified at the hearing that her anxiety attacks were really, really bad, and stated that there were lots of times when she could not get out of the house, longitudinally, the record does not support that the claimant has sought out a psychologist, psychiatrist, or been seen at a mental health clinic, nor has she had any mental impairment related hospitalizations. Moreover, I find that the claimant's depressive symptomatology is situational in nature. There is simply nothing in the evidential record or testimony which indicates that the claimant's mental impairment would significantly or adversely affect her ability to perform basic work related activities. Thus understood, her mental impairment does not result in any significant limitations and is deemed to be non-severe in nature (20 CFR §§ 404.1521; and 416.921; SSR 96-3p).

[Tr. 24].

Exact compliance with the procedure set forth in 20 CFR § 404.1520a in this case would have been a futile gesture, given that there was so little medical evidence of mental impairment or of a resulting decrease in residual functional capacity due to the alleged mental impairment. *See Hardy v. Chater*, 64 F.3d 405, 408 (8th Cir. 1995) (on record before ALJ, completion of [then required] Psychiatric Review Technique Form was little more than formality); *Montgomery v. Shalala*, 30 F.3d 98, 100-01 (8th Cir. 1994) (suggesting that failure to complete Psychiatric Review Technique Form could, in certain cases, be harmless error, but holding that in that case

failure to complete the form was reversible error under circumstances of lengthy psychiatric history inaccurately summarized in hypothetical question).  In *Montgomery*, the plaintiff had almost a twenty year history of treatment for depression, a suicide attempt, "severe suicidal thoughts in the past" and a significant family history of suicide.  *Id.* at 100.

Here, although the ALJ did not expressly set forth the categories in discussing Plaintiff's alleged mental impairment, he had previously discussed her activities of daily living. [Tr. 22]. As discussed above, the ALJ rejected her allegations regarding her restrictions in daily living as not being credible to the extent alleged. [Tr. 22].  Furthermore, the ALJ discussed the history of the Plaintiff's allegations of mental impairment and the lack of evidence in the record indicating that the Plaintiff's mental impairment would significantly or adversely affect her ability to perform basic work related activities.  The only evidence in the record before the ALJ of Plaintiff's alleged mental impairment was the testimony of the Plaintiff and her husband and the fact that Plaintiff was prescribed medication for depression and anxiety.  Therefore, the ALJ's failure to follow the exact procedure set forth in 20 CFR § 404.1520a does not constitute reversible error.  Therefore, the Court must consider whether the ALJ's findings are supported by substantial evidence.

First, however, the Court must consider whether the medical records diagnosing Plaintiff with moderate major depressive disorder and a panic disorder with agoraphobia should be considered.  Mandatory review of certain Social Security cases by the Appeals Council is governed by 20 C.F.R. § 404.970(b) (1989). This section provides in pertinent part:

> If new and material evidence is submitted, the Appeals Council shall consider the
> additional evidence only where it relates to the period on or before the date of the

16

administrative law judge hearing decision. The Appeals Council shall evaluate the
entire record including the new and material evidence submitted if it relates to the
period on or before the date of the administrative law judge hearing decision. It
will then review the case if it finds that the administrative law judge's action,
findings, or conclusion is contrary to the weight of the evidence currently of
record.

20 C.F.R. § 404.970(b).  "Under this regulation, if a claimant files additional medical evidence

with a request for review prior to the date of the Secretary's final decision, the Appeals Council

MUST consider the additional evidence if the additional evidence is (a) new, (b) material, and (c)

relates to the period on or before the date of the ALJ's decision."  *Williams v. Sullivan*, 905 F.2d

214, 215-16 (8th Cir. 1990).  "The newly submitted evidence is to become part of what we will

loosely describe here as the 'administrative record,' even though the evidence was not originally

included in the ALJ's record."  *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

"If the Appeals Council does not consider the new evidence, a reviewing court may

remand the case to the Appeals Council if the evidence is new and material.  *See Williams v.*

*Sullivan,* 905 F.2d 214, 217 (8th Cir.1990).  If the Appeals Council denied review, the Court

does not evaluate the Appeals Council's decision to deny review, but rather the Court determines

whether the record as a whole, including the new evidence, supports the ALJ's determination.

*Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000).     Here, the Appeals Council stated:

In looking at your case, we considered the reasons you disagree with the decision
and the additional evidence listed on the enclosed Order of Appeals Council.

We also looked at . . . Medical Records from Health Resources of Arkansas dated
April 5 and 6, 2005.  The Administrative Law Judge decided your case through
January 19, 2005.  This new information is about a later time.  Therefore, it does
not affect the decision about whether you were disabled beginning on or before
January 19, 2005.

17

[Tr. 6].  As the Appeals Council noted, the records from Health Resource of Arkansas that the Plaintiff requests the Court consider show that the date of service is April 5, 2005.  Here, the Appeals Council denied review, finding that the new evidence was either not material or did not detract from the ALJ's conclusion.  Therefore, this Court must determine whether the record as a whole, including the new evidence supports the ALJ's determination.

Plaintiff argues that the analysis that the ALJ provided is flawed.  Specifically, Plaintiff states that the ALJ reported that there was no medical evidence showing the claimant continued to experience problems with anxiety and depression from April 2003 until November 5, 2004, fourteen (14) months later.  [Tr. 23-24]. Plaintiff states that on April 15, 2004, the Plaintiff's depression and anxiety were noted, as well as her use of three antianxiety or antidepressant medications: Lexapro, Lorazepam, and Alprazolam. [Tr. 210].  Plaintiff also notes that she was prescribed her antidepressant medications on August 26, 2003; October 9, 2003; January 13, 2004; February 17, 2004; and May 25, 2004. [Tr. 91-92].  Plaintiff states that on or about July 9, 2004, she "apparently must have had some type of conversation with her doctor because she was switched from Lexapro to Zoloft." [Tr.89-93].  Plaintiff states that based upon this evidence, the Plaintiff continued to receive treatment for her depression and anxiety following August 2003. Plaintiff further relies upon the report from Health Resources of Arkansas dated April 5, 2004, which was submitted after the ALJ hearing, which shows a diagnosis of "Major Depressive Disorder, Moderate" and "Panic Disorder with Agoraphobia."  [Tr. 317].  Finally, Plaintiff argues that a proper mental analysis would have exposed the Plaintiff's severe mental

18

impairment and that the ALJ would have recognized his duty to fully and fairly develop the record and order a consultative exam.

20 C.F.R. § 404.1520(c) states:

> You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment.

20 C.F.R. § 404.1521(a) provides that an "impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."  The fact that Plaintiff was prescribed medication for depression and anxiety alone is not enough to support Plaintiff's allegations.  The additional evidence submitted by Plaintiff states that "Client said her depression has gotten worse," but only notes that Plaintiff's activity is "slowed," her mood is "depressed," and her memory is "impaired."  [Tr. 315].  The report at issue states that Zoloft provides "some benefit," Loranzapam "does help," Lexapro "did not help." [Tr. 313].  However, the report did not provide a conclusive psychiatric determination of disability or inability to work.  Furthermore, the report indicates that Plaintiff enjoys cooking, walking, reading, doing crossword puzzles, caring for her two Chihuahua dogs, attending church and visiting with her father. [Tr. 312].  Plaintiff was noted to be well-groomed, her demeanor and eye contact were average, and she had clear speech. [Tr. 315, 321].  Her thought content was logical, she had full affect, and there were no delusions or hallucinations. [Tr. 315, 320.  She was cooperative and had good cognition, and her intellectual function was deemed in the average range. [Tr. 315, 320].

Plaintiff also argues that the ALJ substituted his judgment for that of the Plaintiff's treating physicians in finding that the Plaintiff's mental impairment was situational in nature. Plaintiff also states that the ALJ should have ordered a consultative examination with a psychologist to ascertain the magnitude of Plaintiff's mental impairment.  Plaintiff argues that situational anxiety does not require treatment and that the depressed feelings generally last from a few days to a few months.[1]  She states that if the Plaintiff's depression and anxiety were only situational, they should have abated in August 2004 when the ALJ noted the claimant had no further evidence of malignancy. However, the post-hearing report submitted by Plaintiff states, "History of depression due to health," and notes her serious health issues, including chronic back pain and history of breast cancer."  [Tr. 310].  Furthermore, the report notes that the Plaintiff "Lost Medicaid.  Disability is pending.  Husband not working due to back injury.  Financial issues." [Tr. 310].  The Court finds that the ALJ's finding that Plaintiff's anxiety and depression were situational and non-severe in nature was not erroneous.  *See Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8 th Cir. 2001).

Additionally, the mere fact that a claimant has been prescribed antidepressants is not enough to require the ALJ to inquire further into the condition by ordering a psychological evaluation.  *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003).  The ALJ's failure to order a consultative examination was not erroneous.

Here, the ALJ found that the Plaintiff's mental impairment was non-severe and situational in nature.  Considering the administrative record as a whole, and the report from

---

[1]*Mosby's Medical Dictionary*, 4ᵗʰ ed. 1994; Larry E. Quicksall, *Family Growth Reports, Depression Basics*, 2002.

Heath Resources of Arkansas diagnosing Plaintiff with moderate major depressive disorder and a panic disorder with agoraphobia, the Court finds that the ALJ's findings were supported by substantial evidence.

## **CONCLUSION**

After a careful review of the evidence, the Court finds that there is substantial evidence on the record as a whole to support the Commissioner's decision that Plaintiff is not disabled within the meaning of the Social Security Act.  The ALJ's administrative decision is affirmed.

Accordingly,

IT IS THEREFORE ORDERED that the Commissioner's decision be, and it is hereby, AFFIRMED.

IT IS SO ORDERED THIS 1st day of March, 2007.


/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE